DISCIPLINARY COUNSEL *v*. GONZALEZ.

[Cite as *Disciplinary Counsel v. Gonzalez,* 138 Ohio St.3d 320,

2014-Ohio-851.]

*Attorney discipline—Failure to notify clients of lack of malpractice insurance— Commingling—Failure to maintain records for trust account— Withdrawal from representation without permission of court—Failure to cooperate in disciplinary proceeding—Two-year suspension with one year stayed.*

(No. 2013-0222—Submitted June 5, 2013—Decided March 11, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 12-048.

_____

**Per Curiam**.

{¶ 1} Respondent, Vincent Ferdinand Gonzalez of Cleveland, Ohio, Attorney Registration No. 0008558, was admitted to the practice of law in Ohio in 1974. In 2000, we publicly reprimanded him for using undignified language and shouting at another attorney during negotiations before a domestic-relations court magistrate. *Cuyahoga Cty. Bar Assn. v. Gonzalez*, 89 Ohio St.3d 470, 733 N.E.2d 587 (2000).

{¶ 2} In 2012, relator, disciplinary counsel, charged Gonzalez with commingling personal and client funds in his client trust account, failing to maintain records of client-related expenditures, misappropriating a portion of a client's settlement award, and abandoning another client on the final day of trial. Although Gonzalez stipulated to many of the allegations in relator's amended complaint, he denied that most of his actions violated the Rules of Professional Conduct. After a hearing, a three-member panel of the Board of Commissioners

on Grievances and Discipline issued a report finding that Gonzalez had committed most of the charged misconduct and recommending that we indefinitely suspend him from the practice of law in Ohio, with reinstatement conditioned on restitution to a former client. The board adopted the panel's report and recommendation in its entirety.

{¶ 3} Gonzalez objects to the board's findings of misconduct in three of the seven counts against him. Upon our review of the record, we sustain Gonzalez's objections in part and overrule them in part and find that the appropriate sanction in this case is a two-year suspension with the second year stayed and payment of restitution as a condition of reinstatement.

**Misconduct**

*Count one—notice of lack of liability insurance*

{¶ 4} Gonzalez is a solo practitioner concentrating in the areas of domestic relations, criminal defense, civil litigation, real estate, and personal injury. He has not maintained professional liability insurance since February 2007. Under Prof.Cond.R. 1.4(c), if a lawyer does not maintain professional liability insurance over certain amounts, the lawyer must notify clients of this fact on a "separate form * * * signed by the client." The prescribed "separate form" is set forth at the end of Prof.Cond.R. 1.4. At the panel hearing, Gonzalez testified that he notified clients in his fee contract that he did not carry malpractice insurance, but at oral argument, he acknowledged that he does not always use a fee or retainer contract. Because Gonzalez did not use the prescribed separate notice form, the board found, and we agree, that Gonzalez violated Prof.Cond.R. 1.4(c).

*Count two—commingling personal and client funds*

{¶ 5} In 2009, a jury awarded damages to Gonzalez's wife in a personal-injury case filed by her and Gonzalez. In July 2009, Gonzalez deposited his wife's award of $122,169.86 into his client trust account, and by the end of August 2009, Gonzalez had disbursed $38,065 to pay their attorney's fees and

2

$50,500 to himself, his wife, and to cash. Gonzalez, however, kept the remaining amount of his wife's personal-injury award, $33,604.86, in his client trust account, and over the next five months, he issued 25 checks drawn on his trust account to various individuals and entities for personal items and services. For example, in September 2009, he issued trust-account checks for car repairs and to purchase kitchen cabinets; in November 2009, he issued a trust-account check for chimney work; and in January 2010, he issued a trust-account check for tile work. During that same time period, Gonzalez held another client's funds in his trust account. As a result, the board found that Gonzalez violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property). Relator also charged Gonzalez with violating Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). The board, however, recommends that we dismiss the charge under Prof.Cond.R. 8.4(h) because Gonzalez did not mishandle or misappropriate any of the client's funds commingled with his wife's personal funds. We accept the board's recommendation and hereby dismiss the alleged violation of Prof.Cond.R. 8.4(h) in count two.

*Gonzalez's objections*

{¶ 6} Gonzalez appears to object to the board's findings here, stating in his brief that the trust-account disbursements from his wife's settlement were requested by her, that he "did not hold money for clients," and that his trust account was "primarily used for insurance settlements." Whether Gonzalez's wife authorized the trust-account disbursements, however, is irrelevant to the alleged violation of Prof.Cond.R. 1.15(a). The problem was that Gonzalez held his wife's personal funds in his trust account for five months, during which time period he had also deposited client funds. Prof.Cond.R. 1.15(a) expressly requires a lawyer to hold property of clients "separate from the lawyer's own property" in

an interest-bearing account. In addition, Gonzalez's objection that he did not "hold money for clients" in his trust account is contradicted by the record. During the board proceedings, Gonzalez stipulated and testified that at the time he kept his wife's personal funds in his trust account, he had also deposited funds belonging to a client in that account. Accordingly, Gonzalez's objections to the board's findings in count two are overruled, and we agree that Gonzalez violated Prof.Cond.R. 1.15(a).

*Count three—Fernando Perez matter*

{¶ 7} On October 21, 2010, Gonzalez deposited a $20,000 settlement check into his trust account on behalf of Fernando Perez, whom Gonzalez represented in a personal-injury case. Over the next two weeks, Gonzalez disbursed $6,000 to himself for his attorney fees in the Perez matter, $5,000 to a doctor related to Perez's case, and $7,697.73 to Perez. Gonzalez, however, failed to produce any records accounting for the remaining $1,302.27 from Perez's settlement. And within five months of depositing Perez's settlement funds into his trust account, Gonzalez overdrew the account by issuing trust-account checks unrelated to Perez's case. Specifically, in January 2011, Gonzalez issued a check to the clerk of a court of appeals, although he could not establish the owner of the funds for that check, and he also issued a $1,000 check to himself. And in March 2011, he issued two checks on behalf of a client who had no money in the account.

{¶ 8} Relator charged Gonzalez with misappropriating $1,302.27 from Perez. Gonzalez disputed the allegation, claiming that he used the remaining $1,302.27 from the settlement for expenses and fees relating to Perez's case. Although Gonzalez could not produce any receipts accounting for these alleged case-related expenditures, he testified that Perez's settlement statement indicated how all of Perez's settlement proceeds were disbursed. Gonzalez, however, refused to produce a copy of the settlement statement to relator, insisting that it

was protected by the attorney-client privilege and that relator had the burden to first obtain a release from Perez. Gonzalez also refused to ask Perez for a release himself, claiming that Perez had no complaints about him, and therefore Gonzalez did not want to unnecessarily involve Perez in the disciplinary matter.

**{¶ 9}** Based on this record, the board determined that Gonzalez had violated Prof.Cond.R. 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h).

*Gonzalez's objections*

**{¶ 10}** Gonzalez claims that relator failed to prove any rule violations regarding his representation of Perez and specifically objects "to the conclusion [that] he has been dishonest with his clients or that he did not give his clients what they were entitled to receive from their cases." In support, Gonzalez attached to his brief an affidavit from Perez and a copy of the previously undisclosed settlement statement.

**{¶ 11}** We have recognized, however, that "Gov.Bar R. V provides for a formal evidentiary hearing before a panel of the board and does not provide for the introduction of additional evidence once the proceedings are before this court." *Disciplinary Counsel v. Squire*, 130 Ohio St.3d 368, 2011-Ohio-5578, 958 N.E.2d 914, ¶ 45, fn. 3. Accordingly, we will accept additional evidence at this late stage only "under the most exceptional of circumstances." *Id.*, citing *Columbus Bar Assn. v. Sterner*, 77 Ohio St.3d 164, 672 N.E.2d 633 (1996). Here, Gonzalez could have called Perez to testify in his defense at the panel hearing, and he could have submitted a copy of the settlement statement into the record below—either in response to relator's requests or as evidence at the panel hearing. Gonzalez, however, chose not to and instead insisted that relator had the burden to obtain the document from his client. On this record, no exceptional circumstances

exist that would allow Gonzalez to introduce these documents for the first time in his objections.

{¶ 12} Nevertheless, we sustain in part and overrule in part Gonzalez's objections in this count. We agree with the board's findings that Gonzalez violated Prof.Cond.R. 1.15(a)(2) and 8.4(h). Gonzalez failed to maintain or produce receipts and other documentation accounting for $1,302.27 from Perez's settlement, and he also overdrew his trust account, issued two trust-account checks on behalf of a client who had no funds in that account, issued a trust-account check to the clerk of courts on behalf of a client he could not identify, and failed to keep client ledgers for Perez's account. In short, Gonzalez flagrantly violated the disciplinary rules requiring that he maintain detailed records of the money held and disbursed on behalf of clients, and that conduct adversely reflects on his fitness to practice law.

{¶ 13} However, we disagree with the board's conclusion that relator proved that Gonzalez misappropriated client funds or otherwise engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of Prof.Cond.R. 8.4(c). In his amended complaint, relator alleged that Gonzalez "misappropriated $1,302.27 belonging to Perez." Although the board did not expressly conclude that Gonzalez "misappropriated" from Perez, it found that because Gonzalez "could not account for the missing $1,302.27," he "committed the violations alleged."

{¶ 14} In attorney disciplinary proceedings, the relator bears the burden of proving, by clear and convincing evidence, the facts necessary to establish a violation of a disciplinary rule. *Squire*, 130 Ohio St.3d 368, 2011-Ohio-5578, 958 N.E.2d 914, ¶ 34. Although relator proved that Gonzalez failed to account for $1,302.27 in client funds—for which we are separately sanctioning him—this misconduct alone does not necessarily show that Gonzalez also misappropriated the money from Perez or defrauded him. "[M]isappropriation is '[t]he application

6

of another's property or money dishonestly to one's own use.' " *Id.* at ¶ 40, quoting *Black's Law Dictionary* 1088 (8th Ed.2009). The board did not cite any evidence that Gonzalez had dishonestly used Perez's money for his own purposes.

{¶ **15**} Instead, the board cited *Disciplinary Counsel v. Weiss*, 133 Ohio St.3d 236, 2012-Ohio-4564, 977 N.E.2d 636, for the proposition that Gonzalez had a duty to produce records establishing the proper disbursement of Perez's funds and because he refused to do so, he acted dishonestly with the money. The board's reliance on *Weiss* is misplaced. *Weiss* was a default proceeding in which a former client of Weiss clearly believed that he was entitled to additional portions of settlement funds held in Weiss's trust account, and evidence in the record supported the former client's position. But Weiss moved to Florida and would not respond to inquiries from his former client's attorney or relator. *Id.* at ¶ 5-11. The board characterized Weiss as having "essentially gone into hiding to avoid paying his client."

{¶ **16**} In contrast, Perez did not testify against Gonzalez, and therefore the record is unclear whether Perez believed that Gonzalez had misappropriated any of his money. And this is not a default proceeding—Gonzalez repeatedly testified that he had not misappropriated or acted dishonestly with any of Perez's money. *Weiss* is factually distinguishable, and we cannot rely on *Weiss* to presume that Gonzalez dishonestly used Perez's money for his own use. On this record, Gonzalez's deficient recordkeeping and accounting practices are at least as likely to blame for the missing funds.

{¶ **17**} Acts of misappropriation result in the "strictest discipline," with a presumptive sanction of disbarment. *Disciplinary Counsel v. Kelly*, 121 Ohio St.3d 39, 2009-Ohio-317, 901 N.E.2d 798, ¶ 17, quoting *Cleveland Bar Assn. v. Belock*, 82 Ohio St.3d 98, 100, 694 N.E.2d 897 (1998). Given the seriousness of the charge and the consequences of a violation, we find that relator has failed to

prove by clear and convincing evidence that Gonzalez misappropriated Perez's money or otherwise acted dishonestly in violation of Prof.Cond.R. 8.4(c).

{¶ 18} In sum, we sustain Gonzalez's objection with respect to the violation of Prof.Cond.R. 8.4(c) and hereby dismiss that charge. We overrule his remaining objections relating to this count and find that Gonzalez violated Prof.Cond.R. 1.15(a)(2) and 8.4(h).

*Count four—trust-account recordkeeping violations*

{¶ 19} Since February 2007, Gonzalez has not maintained client ledgers for funds deposited in his trust account, nor has he performed monthly reconciliations of his trust account or retained client records required for reconciliations. Based on these recordkeeping improprieties, the board found that Gonzalez had violated Prof.Cond.R. 1.15(a)(2) and 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of transactions involving the lawyer's client trust account). We concur with the board's findings.

*Count five—Ramon Colon matter*

{¶ 20} In March 2011, Ramon Colon, a client of Gonzalez, gave him $400 to retain an expert. Gonzalez, however, placed Colon's money in a client file, rather than his trust account, and Gonzalez then paid the expert with a trust-account check. Gonzalez also admitted that he did not maintain client ledgers for Colon's funds. Based on this conduct, the board found, and we agree, that Gonzalez violated Prof.Cond.R. 1.15(a)(2) and 1.15(c) (requiring a lawyer to deposit into a client trust account legal fees and expenses that have been paid in advance).

*Count six—Maria Samame matter*

{¶ 21} In 2009, Maria Samame, a Venezuelan native, hired Gonzalez to represent her in a divorce case. According to Gonzalez, Samame discharged him in July 2010 for financial reasons, but the trial judge would not release him as counsel. Trial commenced in January 2011, and Gonzalez claimed that Samame

had discharged him again on the morning of the fourth day of trial.  According to the trial transcript, Gonzalez stated the following to the magistrate:

> I am formally requesting that I be allowed to withdraw since I've been discharged twice in this case, and it was only at the behest of Judge Karner that I remain, because I was trying to help Miss Samame with understanding the process here.
>
> And at this point, in as much as, again, it's been very clear to me that this court is not going to award any attorney fees to Miss Samame, then I wish to withdraw.  I'm not going to work for free.

{¶ 22} The magistrate denied Gonzalez's request to withdraw and ordered him to continue his representation of Samame.  Samame indicated that she could not afford to pay Gonzalez, but the magistrate explained to her that he had not yet made any decision on attorney fees and that because she had no legal background, he would not allow her attorney to withdraw in the middle of trial.[1]

{¶ 23} At that point, Gonzalez was in the middle of cross-examining plaintiff, Samame's husband, but after the magistrate denied his withdrawal request, Gonzalez stated that he had no further questions.  He then withdrew two previously marked exhibits.  The magistrate asked Gonzalez whether he understood the position in which his actions were placing his client, but Gonzalez insisted again—despite the fact that the magistrate had already denied his request to withdraw—that he had been discharged by his client.

{¶ 24} Plaintiff's counsel then testified regarding his attorney fees, and Gonzalez again offered no questions on cross-examination.  After plaintiff rested

---

1. Loc.R. 7 of the Court of Common Pleas of Cuyahoga County, Domestic Relations Division, provides that an attorney of record may not be relieved of his or her responsibilities unless the court permits the attorney's withdrawal.  The local rule further states that the trial court may deny an attorney's request to withdraw if a trial date has been scheduled.

his case, Gonzalez informed the magistrate that Samame wanted to testify in narrative form, but the magistrate ordered him to ask his client questions under direct examination. The magistrate also pleaded with Gonzalez to represent his client, explaining that the court had to make findings of fact for spousal support and division of property and without evidence for her case, Samame would be in a "dangerous position" and "really vulnerable." The magistrate further questioned whether Samame genuinely appreciated the danger that could result if she did not offer any evidence into the record. Despite the magistrate's pleading, Gonzalez's direct examination consisted of one question—"what do you wish to tell the court?"—and after a brief narrative response by Samame, Gonzalez did not offer any substantive follow-up questions. Nor did he call any other witnesses to support Samame's case-in-chief. In addition, the magistrate had to order Gonzalez to make a closing argument, which lasted only 30 seconds.

{¶ 25} Despite Gonzalez's fears regarding not getting paid, the magistrate ultimately awarded attorney fees to Samame. Specifically, in his April 2011 entry granting the parties' divorce, the magistrate ordered plaintiff to pay Gonzalez $1,754.05 in attorney fees.

{¶ 26} At the panel hearing, relator called the magistrate and plaintiff's counsel to testify about Gonzalez's conduct during the fourth day of Samame's divorce trial. The magistrate described Gonzalez's effort as "[h]alf-hearted at best," and he testified that Gonzalez placed his client in an "untenable position" and that he "wasn't doing his job." For his part, Gonzalez testified that Samame discharged him because she could not afford to pay him and that he was only following her instructions not to cross-examine any witnesses or otherwise participate in the trial.

{¶ 27} The board determined that relator's witnesses corroborated relator's contention that Gonzalez "had failed to take the necessary measures to protect Samame's interests." Further, the board concluded that Gonzalez's

conduct was "motivated by financial considerations and not by the wishes or needs of Samame," as evidenced by his statement to the magistrate that he would not "work for free." Accordingly, the board found that Gonzalez had violated Prof.Cond.R. 1.2(a) (requiring a lawyer to abide by the client's decisions concerning the objectives of representation and to consult with the client as to means by which they are to be pursued), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.16(c) (prohibiting a lawyer from withdrawing from representation in a proceeding without leave of court if the rules of the tribunal so require),[2] 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h).

*Gonzalez's objections*

{¶ 28} Gonzalez claims that relator has not proven any rule violations regarding his representation of Samame. Specifically, he reiterates his position that Samame instructed him not to continue with the divorce case, and he further points to the testimony of plaintiff's counsel, who stated that Samame ultimately received everything from the divorce to which she was entitled.

{¶ 29} We overrule Gonzalez's objections with respect to the board's findings that he violated Prof.Cond.R. 1.3, 1.16(c), 8.4(d), and 8.4(h). The fact that Samame ultimately received a fair judgment in the divorce proceeding—to the extent that is true—does not absolve Gonzalez's professional misconduct. After the magistrate denied Gonzalez's request to withdraw and ordered that he proceed with his representation of Samame, Gonzalez nonetheless continued to insist that he had been discharged and displayed little, if any, effort to protect his client's best interests. He affirmatively withdrew exhibits that he had previously

---

2. The board's report states that Gonzalez violated Prof.Cond.R. 1.6(c), which is a typographical error, as relator's amended complaint charged Gonzalez with violating Prof.Cond.R. 1.16(c) and the board's description of the rule matches Prof.Cond.R. 1.16(c).

marked, and the magistrate had to order him to conduct a direct examination of his client and a closing argument.

**{¶ 30}** In the end, the panel members, who observed Gonzalez and the other witnesses at the panel hearing, determined that Gonzalez was more concerned about his compensation than ensuring that Samame receive the most equitable resolution in her divorce proceeding. "Unless the record weighs heavily against a hearing panel's findings, we defer to the panel's credibility determinations, inasmuch as the panel members saw and heard the witnesses firsthand." *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24. Accordingly, we accept the panel members' conclusions here about Gonzalez's motivations.

**{¶ 31}** However, we cannot conclude that relator has proven by clear and convincing evidence that Gonzalez also violated Prof.Cond.R. 1.2(a). That rule requires a lawyer to "abide by a client's decisions concerning the objectives of representation" and "consult with the client" about those objectives. Here, relator admitted that Samame refused to testify at the panel hearing. Thus, we do not know the specific decisions she made about her case or whether Gonzalez failed to abide by her decisions. Gonzalez testified that he consulted with Samame and she instructed him not to ask any further questions on cross-examination. Neither relator nor the board has pointed to any evidence demonstrating that Gonzalez failed to abide by his client's decisions. Indeed, the magistrate testified at the panel hearing that it was "evident" that Gonzalez and Samame had discussed whether he would proceed with the case. Accordingly, we cannot conclude that there is clear and convincing evidence that Gonzalez violated Prof.Cond.R. 1.2(a).

**{¶ 32}** Thus, we sustain Gonzalez's objection with respect to the violation of Prof.Cond.R. 1.2(a) and hereby dismiss that charge. We overrule his remaining objections relating to this count and find that he violated Prof.Cond.R. 1.3, 1.16(c), 8.4(d), and 8.4(h).

*Count seven—failure to cooperate*

{¶ 33} In October 2011, plaintiff's counsel in the Samame matter submitted a grievance to relator regarding Gonzalez's conduct during that trial. Relator sent a letter of inquiry to Gonzalez by certified mail, and despite confirming receipt of the letter, Gonzalez failed to respond. Gonzalez also failed to respond to a second letter sent by relator in December 2011. Gonzalez appeared for a deposition in January 2012 and testified that he received relator's letters but found them to be "of no consequence." In May 2012, relator sent Gonzalez letters requesting copies of client files relating to his representation of Samame, Perez, Colon, and another former client, but Gonzalez did not respond or object to the requests until September 2012.

{¶ 34} The parties stipulated that Gonzalez violated Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation) and 8.4(h). The board accepted the parties' stipulations, adding that "in light of [Gonzalez's] explicit contempt for the disciplinary process and his complete lack of responses to the reasonable demands made by Relator," clear and convincing evidence supported the violation for Prof.Cond.R. 8.4(h). We agree that Gonzalez violated Prof.Cond.R. 8.1(b) and 8.4(h).

## Sanction

{¶ 35} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties violated, the actual injury caused, the existence of any aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B), and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16; *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. The board recommends that Gonzalez be indefinitely suspended, with reinstatement conditioned on payment of restitution to Perez in

the amount of $1,302.27. Gonzalez does not address the appropriate sanction in his objections. Instead, he indicates that he is contemplating retirement and that he submitted objections only to contest the board's conclusion that he has been dishonest with his clients. Upon consideration of the relevant factors, we find that a two-year suspension with the second year stayed, along with payment of restitution to Perez as a condition of reinstatement, is the appropriate sanction in this case.

{¶ 36} The board found the existence of four aggravating factors—a prior disciplinary offense, multiple offenses, lack of cooperation in the disciplinary process, and refusal to acknowledge the wrongfulness of his conduct. *See* BCGD Proc.Reg.10(B)(1)(a), (d), (e), and (g). The board did not find any mitigating factors. We concur in the board's findings.

{¶ 37} For precedent, the board again relies on *Disciplinary Counsel v. Weiss*, 133 Ohio St.3d 236, 2012-Ohio-4564, 977 N.E.2d 636, a default proceeding in which an attorney was charged—as Gonzalez was—with using his client trust account as a personal account, failing to cooperate in the disciplinary proceeding, and dishonestly converting a portion of a client's settlement to his own use. But in contrast to the facts here, in *Weiss* we found that the relator had sufficiently proven all of the charged misconduct, including a violation of Prof.Cond.R. 8.4(c) "by using dishonesty, fraud, deceit, or misrepresentation to convert a portion of those [settlement] funds to his own use." *Id.* at ¶ 13. Accordingly, we indefinitely suspended Weiss from the practice of law and ordered that he make restitution to the client whose settlement funds he had converted. *Id.* at ¶ 16. Because we do not find that the evidence here supports a finding that Gonzalez similarly violated Prof.Cond.R. 8.4(c), a lesser sanction than in *Weiss* is justified.

{¶ 38} However, we nonetheless accept the board's recommended condition that Gonzalez make restitution to Perez. Although the evidence does

not clearly and convincingly show that Gonzalez dishonestly converted the $1,302.27 to his own use, Perez's money remains unaccounted for. And Gonzalez was either unable or unwilling to produce any receipts or any other records demonstrating how he expended those client funds. Without any evidence showing the proper disbursement of the missing funds, we must assume that the money belongs to Perez, and therefore Gonzalez must make restitution to Perez in the amount of $1,302.27.

{¶ 39} To summarize, Gonzalez has failed to properly notify clients that he lacks malpractice insurance, commingled client and personal funds, failed to account for client funds in his trust account, failed to keep records for client-related expenditures, failed to cooperate in this disciplinary proceeding, and engaged in a range of misconduct during the trial of a client's case. Given this misconduct, and having reviewed the aggravating factors and finding no mitigating factors, we hold that the appropriate sanction in this case is a two-year suspension with the second year stayed on the condition that Gonzalez commit no further misconduct during the term of his suspension. If Gonzalez fails to comply with the condition of the stay, the stay will be lifted and he will serve the full two-year suspension. In addition, reinstatement is contingent on the condition that Gonzalez make restitution to Perez in the amount of $1,302.27. Costs are taxed to Gonzalez.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, KENNEDY, and O'NEILL, JJ., concur.

FRENCH, J., concurs with the sanction but would allow Gonzalez to submit an accounting of the proper disbursement of settlement funds to Perez in lieu of restitution to Perez.

LANZINGER, J., dissents and would impose an indefinite suspension, as recommended by the board.

_____

Joseph Caligiuri, Chief Assistant Disciplinary Counsel, for relator.

Vincent Ferdinand Gonzalez, pro se.

_____