[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Cheselka,* Slip Opinion No. 2019-Ohio-5286.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-5286

DISCIPLINARY COUNSEL *v.* CHESELKA.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Cheselka,* Slip Opinion No. 2019-Ohio-5286.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to act with reasonable diligence in representing a client, and the Rules for the Government of the Bar—Two-year suspension, with the second year stayed on conditions.*

(No. 2018-1764—Submitted May 8, 2019—Decided December 24, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-050.

_____

**Per Curiam.**

{¶ 1} Respondent, Michael Joseph Cheselka Jr., of Cleveland, Ohio, Attorney Registration No. 0076667, was admitted to the practice of law in Ohio in 2003.

**{¶ 2}** In a January 2018 amended complaint, relator, disciplinary counsel, charged Cheselka with 28 violations of the Rules of Professional Conduct arising from his representation of six separate clients in criminal matters. Relator alleged that among other violations, Cheselka failed to provide competent representation, failed to act with reasonable diligence and promptness, failed to reasonably communicate with clients, failed to deposit a fee paid in advance into his client trust account, made a false statement of material fact to a court and to the Board of Professional Conduct in this disciplinary proceeding, and failed to cooperate in the investigation of three client grievances.

**{¶ 3}** After a panel of the board conducted a hearing, the board issued a report in which it found that Cheselka committed 19 rule violations and recommended that we dismiss eight alleged rule violations. On those findings, the board recommended that we suspend Cheselka from the practice of law for two years, with one year stayed on conditions, and order him to serve a one-year period of monitored probation upon reinstatement. No objections have been filed.

**{¶ 4}** We adopt the board's findings of misconduct with the exception of one violation that was not alleged in relator's complaint, dismiss the eight remaining alleged rule violations, and adopt the board's recommended sanction.

## Misconduct

### Count I: The Jojwan Martin Matter

**{¶ 5}** In 2008, Jojwan Martin was convicted of murder and sentenced to 18 years to life in prison. His conviction rested largely upon the testimony of two eyewitnesses, including Earwin Watters, who was in federal custody and awaiting sentencing on criminal charges at the time of Martin's trial. The Eighth District Court of Appeals affirmed Martin's conviction.

**{¶ 6}** In early 2011, Watters contacted Martin's mother, Cynthia Bester, and told her that he had given false testimony against Martin under pressure from the police and prosecutors, that he had not actually witnessed Martin kill anyone,

and that he wanted to recant his testimony. On March 14, 2011, Watters executed a handwritten affidavit stating that he had been pressured to give false testimony at Martin's trial to obtain a lesser sentence in his own criminal case. Bester sent Watters's affidavit and other materials regarding Martin's case to the Ohio Innocence Project at the University of Cincinnati College of Law, but the project declined to take the case and returned the file to Bester in May 2012.

{¶ 7} Bester and her mother met with Cheselka in November 2012 and gave him Watters's affidavit. Cheselka agreed to file a petition for postconviction relief on Martin's behalf for a flat fee of $10,000 (plus $525 for a copy of the trial transcript), which Bester and her mother paid in installments from 2013 to 2015.

{¶ 8} Between August 2013 and March 2016, Cheselka asked Watters to write and execute four additional affidavits—which he later claimed were necessary to correct procedural and substantive defects in Watters's original affidavit. But Cheselka did not file Martin's petition for postconviction relief until May 13, 2016—approximately three and a half years after he first met with Bester and received Watters's 2011 affidavit. And even then, Watters had not signed the affidavit that Cheselka notarized and submitted with Martin's petition for postconviction relief.

{¶ 9} Because Cheselka filed the petition more than 365 days after the transcript was filed in Martin's direct appeal, he was required to show that Martin had been *unavoidably prevented* from discovering the facts that supported the petition. *See* R.C. 2953.21(A)(2) and 2953.23(A)(1). In the petition, Cheselka explained that Martin "was unavoidably delayed beyond the 365 day deadline because Earwin *Watters only provided his unsolicited affidavit in 2016*, well-past the statute's general rule and under circumstances unanticipated by [Martin]." (Emphasis added.) Cheselka failed to mention that Watters first came forward to recant his testimony in 2011 and that he had executed four previous affidavits. Cheselka continued that deception in his May 2017 response to relator's letter of

inquiry, in which he affirmatively stated that "[t]here was no affidavit provided in 2011" and that "[t]here was never a proper affidavit executed before March of 2016." And at his disciplinary hearing, Cheselka admitted that there was no legally significant difference between the first and final affidavits. The trial court denied Martin's postconviction petition without an opinion.

{¶ 10} The board found that Cheselka's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 3.3(a) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Citing the insufficiency of the evidence, however, the board recommends that we dismiss relator's allegations that Cheselka had failed to reasonably communicate with Martin and that Cheselka had failed to promptly refund any unearned portion of his fee at the conclusion of his representation. We adopt the board's findings of misconduct and dismiss the remaining allegations of misconduct with respect to this count.

*Count II: The Barbara Clark Matter*

{¶ 11} In October 2015, Barbara Clark pleaded guilty to stealing more than $188,000 of United States Social Security Administration Supplemental Security Income benefits by continuing to collect her mother's benefits for approximately 30 years after her mother's death. Due to Clark's age and deteriorating health, her counsel urged the trial court to deviate from the guideline sentence of 18 to 24 months of imprisonment and confine her at home. On February 17, 2016, the court sentenced Clark to six months in prison followed by three years of supervised release.

{¶ 12} Shortly after the sentencing hearing—and before the trial court issued its sentencing entry—Clark's son met with Cheselka and expressed his

4

concern that Clark would die in prison. Cheselka agreed to file an emergency motion to modify Clark's sentence. Cheselka had never filed such a motion before but was aware that pursuant to 18 U.S.C. 3582(c), once the trial court issued its sentencing entry, only the director of the Bureau of Prisons was permitted to move the court to modify the sentence.

{¶ 13} Cheselka understood that the trial court could issue the sentencing entry at any time, but he took no immediate action. He testified that he was waiting for Clark's family to respond to his request to compel medical records documenting her deteriorating health. In contrast, Clark testified that once her family paid Cheselka, all communication with him ceased. And although Clark's son called and left multiple messages, Cheselka called him only one time, to ask for more money.

{¶ 14} Approximately three weeks after Clark's sentencing hearing, her son arranged for a physician's letter to be faxed to Cheselka's office. It consisted of a one-paragraph summary of Clark's medical history followed by the doctor's opinion that "incarceration would place even further stress on her heart, possibly worsening her cardiac condition." Cheselka waited nearly two more months before he filed the emergency motion, which the board found was just "an abbreviated recap" of trial counsel's original sentencing memorandum. The motion offered no additional medical evidence and very little in the way of new argument or legal authority. The trial court summarily denied the motion one day after it was filed.

{¶ 15} At his disciplinary hearing, Cheselka attempted to justify the filing of the motion based on his belief that "[a] federal judge can do whatever a federal judge wants to do," regardless of statutory prohibitions and case authority. But the board found that his explanation "bespeaks of more than just a lack of diligence"— "[i]t demonstrates a lack of competence." The board found that Cheselka's conduct violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.3, 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed

about the status of a matter), and 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from a client). But having found that Cheselka provided incompetent representation to Clark, the board declined to find that he violated Prof.Cond.R. 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit a client to make informed decisions regarding the representation) by failing to explain to Clark or her family that which he did not know. The board also recommended that we dismiss another alleged violation based on the insufficiency of the evidence. We adopt the board's findings of misconduct and dismiss the remaining allegations of misconduct with respect to this count.

*Count VI: The Darryl Hill Matter*

{¶ 16} In June 2015, Darryl Hill pleaded guilty to a misdemeanor and three felonies and was sentenced to 12 years in prison. Hill's fiancée, Kimberly Cleveland, retained Cheselka to appeal Hill's convictions. Cleveland signed a written fee agreement and paid a flat fee of $5,000 in installments, but Cheselka did not deposit any portion of the fee into his client trust account.

{¶ 17} On August 1, 2015, Cheselka filed an untimely appeal of Hill's convictions and sentence—without an accompanying motion for leave to file a delayed appeal—but he did no other work on Hill's behalf. Hill later filed a pro se motion for delayed appeal. The court initially dismissed the appeal but granted the motion for delayed appeal on reconsideration after Hill alleged that Cheselka had failed to provide effective assistance of counsel.

{¶ 18} At Cheselka's disciplinary hearing, Cleveland testified that she had made multiple inquiries about the status of Hill's case but that Cheselka had virtually no memory of the matter and that each conversation was "like starting all over." Although she participated in several three-way telephone calls with Cheselka and Hill, she had to go to the courthouse to learn that Cheselka had filed an untimely notice of appeal on Hill's behalf. By July 2017, Cleveland was

frustrated with Cheselka's inaction and went to his office to demand a refund. Cheselka, however, was not there, and shortly thereafter, he ceased all communication with her.

{¶ 19} Cheselka maintained that Hill's goal was not to prevail on appeal but to induce the victim of his offenses to recant and then use that evidence to withdraw his guilty plea. But Hill testified that he had not agreed to employ that strategy in lieu of a direct appeal of his convictions—and that Cheselka never told him that he had not followed through with the direct appeal. He also complained that Cheselka did not return his phone calls, took months to respond to his requests to discuss his case in person at the prison, and took almost a year to provide requested copies of his plea- and sentencing-hearing transcripts.

{¶ 20} In November 2017, Hill wrote to Cheselka to terminate his representation and demand a refund. In response, Cheselka agreed to give Cleveland a partial refund. At Cheselka's disciplinary hearing, he agreed that he owed Cleveland a $2,500 refund.

{¶ 21} The board found that Cheselka's conduct in this count violated Prof.Cond.R. 1.3, 1.15(c) (requiring a lawyer to deposit into a client trust account legal fees and expenses that have been paid in advance), 1.4(a)(3), and 1.4(a)(4), and we adopt those findings. However, we reject the board's finding that Cheselka also violated Prof.Cond.R. 1.16 by failing to refund the unearned portion of Hill's fee, *see* Prof.Cond.R. 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment), because relator did not allege that violation with respect to this count. *See Cincinnati Bar Assn. v. Rothermel*, 112 Ohio St.3d 443, 2007-Ohio-258, 860 N.E.2d 754, ¶ 9.

*Count III: The Adrian Williams Matter*

{¶ 22} On February 3, 2014, Adrian Williams pleaded guilty to two felonies and the state agreed to recommend that he receive a five-year prison sentence. The

trial court did not inform Williams that it was not bound by the parties' agreement and sentenced him to eight years in prison.

{¶ 23} Williams's daughter paid Cheselka $5,135 to appeal her father's convictions, and Cheselka filed a notice of appeal on Williams's behalf on April 4, 2014. But he later dismissed the appeal and filed a motion to withdraw Williams's guilty plea and vacate his sentence based on the trial court's failure to advise Williams that it was not bound by his plea agreement. The trial court denied the motion to withdraw the guilty plea, and Cheselka appealed that order. The court of appeals held that res judicata precluded Williams's claim because he could have advanced that argument in his direct appeal. *State v. Williams*, 8th Dist. Cuyahoga No. 103144, 2016-Ohio-2629.

{¶ 24} At his disciplinary hearing, Cheselka explained that he decided to dismiss Williams's direct appeal based on his associate's erroneous research that led him to believe that he could appeal only Williams's sentence—and not the underlying guilty plea—at that time. Cheselka admitted his error to Williams's family and explained that they could pursue another appeal because he had provided ineffective assistance of counsel.

{¶ 25} Based on this conduct, the board found and we agree that Cheselka failed to provide competent representation to Williams in violation of Prof.Cond.R. 1.1. In accord with the board's recommendation, we dismiss one additional alleged violation with respect to this count.

*Counts IV and V: The Franklyn Williams and Dale Rodano Matters*

{¶ 26} Counts IV and V of relator's amended complaint arise from Cheselka's representation of Franklyn Williams and Dale Rodano in separate criminal matters. The board recommends that we dismiss the underlying allegations of misconduct based on the insufficiency of the evidence. We accept the board's recommendation and dismiss one alleged violation with respect to Count IV and two alleged violations with respect to Count V.

*Cheselka's Failure to Cooperate*

{¶ 27} In light of Cheselka's admitted failure to respond to multiple letters of inquiry regarding the grievances filed by Adrian Williams, Franklyn Williams, and Dale Rodano, the board found clear and convincing evidence that Cheselka violated Prof.Cond.R. 8.1(b) and Gov.Bar R. V(9)(G) (both requiring a lawyer to cooperate in a disciplinary investigation) as charged in Counts III, IV, and V of relator's amended complaint. We accept those findings of misconduct.

**Sanction**

{¶ 28} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 29} The board found eight aggravating factors in this case. Specifically, Cheselka acted with a dishonest or selfish motive, committed multiple offenses, engaged in a pattern of misconduct, failed to cooperate in the disciplinary process, submitted false statements in the disciplinary process, refused to acknowledge the wrongful nature of his conduct, caused harm to vulnerable clients, and failed to make restitution. *See* Gov.Bar R. V(13)(B)(2) through (9).

{¶ 30} As mitigating factors, the board found that Cheselka had no prior discipline in his 15-year legal career, during which he had tried tough cases as a low-cost criminal trial lawyer, and that he had submitted six letters attesting to his good character and reputation. *See* Gov.Bar R. V(13)(C)(1) and (5). The board also attributed mitigating effect to the stress brought on by his parents' declining health and their deaths in June 2015 and September 2016. A clinical and forensic psychologist diagnosed Cheselka with depression and anxiety and theorized that those conditions may have kept Cheselka from responding to some of relator's letters of inquiry—but she also testified that she did not see any evidence that his conditions had affected the quality of his legal representation. The board was not

persuaded by the psychologist's explanation that Cheselka's disorders ebbed and flowed. Noting that Cheselka's disorders seemed to ebb whenever they could have compromised his ability to practice law and seemed to flow only when it was necessary to cooperate with relator's investigation, the board attributed little mitigating effect to the disorders. *See* Gov.Bar R. V(13)(C)(7).

{¶ 31} Cheselka argued that a one-year suspension, fully stayed on the condition that he make restitution of $2,500 in the Hill matter, was the appropriate sanction for his misconduct. Relator, on the other hand, argued that Cheselka should be suspended for two years with no stay, ordered to make restitution, and required to serve two years of monitored probation upon his reinstatement to the practice of law.

{¶ 32} While recognizing that Cheselka had committed significant ethical violations, the board noted that much of his misconduct arose from his efforts to "do too much with too little during a discrete period of time when his personal life was unsettled." The board therefore considered the facts of this case to be akin to those in three cases in which we suspended attorneys for two years with the second year stayed on conditions and ordered them to serve a one-year period of monitored probation—*Disciplinary Counsel v. Folwell*, 129 Ohio St.3d 297, 2011-Ohio-3181, 951 N.E.2d 775; *Disciplinary Counsel v. Talikka*, 135 Ohio St.3d 323, 2013-Ohio-1012, 986 N.E.2d 954; and *Toledo Bar Assn. v. Stewart*, 135 Ohio St.3d 316, 2013-Ohio-795, 986 N.E.2d 947.

{¶ 33} Folwell neglected several client matters, provided incompetent representation to one client, failed to promptly refund unearned fees, failed to maintain required trust-account records, and engaged in dishonest conduct in two client matters. As aggravating factors, we found that he had acted with a dishonest or selfish motive, engaged in a pattern of misconduct, and committed multiple offenses. Mitigating factors consisted of his clean disciplinary history and his cooperation in the disciplinary proceeding.

{¶ 34} Talikka neglected several client matters, failed to inform two of those clients that their cases had been dismissed, failed to refund unearned fees, failed to maintain required trust-account records, and engaged in dishonesty, fraud, deceit, or misrepresentation in five client matters, among other misconduct. Although Talikka had acted with a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses, caused harm to vulnerable clients, and initially failed to make restitution, we also found he had no prior discipline in more than 40 years of practice, had taken on more work than he could handle to maintain his self-esteem as he faced significant health problems, had accepted full responsibility for his misconduct, and had submitted several letters attesting to his good character.

{¶ 35} Similarly, Stewart failed to provide competent and diligent representation to several clients, failed to reasonably communicate with several clients, failed to return client files and unearned fees after his representation was terminated, and failed to cooperate in several of the ensuing disciplinary investigations. Nonetheless, we found that Stewart's clean disciplinary record and difficult personal circumstances at the time he committed some of his misconduct outweighed the aggravating effect of his pattern of misconduct, multiple offenses, failure to cooperate in the disciplinary process, failure to acknowledge the wrongful nature of his misconduct, and efforts to downplay the gravity of that misconduct.

{¶ 36} After observing Cheselka's character, testimony, and demeanor during his four-day disciplinary hearing, the panel was convinced—and the board agreed—that removing Cheselka from the legal marketplace for two years would do no more to protect the public than removing him for two years with one year stayed on conditions designed to address his poor management practices and the stress of his chosen area of practice. Having reviewed the record and considered Cheselka's misconduct, the relevant aggravating and mitigating factors, and the sanctions we have imposed in comparable cases, we agree.

{¶ 37} Accordingly, Michael Joseph Cheselka Jr. is suspended from the practice of law in Ohio for two years, with the second year stayed on the conditions that he (1) engage in no further misconduct, (2) make restitution of $2,500 within 60 days of the date of this order to Kimberly Cleveland relative to Cheselka's representation of Darryl Hill, (3) submit to an evaluation by the Ohio Lawyers Assistance Program ("OLAP"), and (4) pay the costs of these proceedings. If Cheselka fails to comply with any condition of the stay, the stay will be lifted and he will serve the entire two-year suspension. In addition to the reinstatement requirements set forth in Gov.Bar R. V(24), Cheselka shall be required to demonstrate that he has complied with any treatment or counseling recommendations arising from his OLAP evaluation and has completed six hours of continuing legal education focused on law-office management in addition to the requirements of Gov.Bar R. X. Upon reinstatement to the practice of law, he shall serve a one-year term of monitored probation in accordance with Gov.Bar R. V(21).

Judgment accordingly.

O'CONNOR, C.J., and FRENCH and FISCHER, JJ., concur.

KENNEDY, J., concurs in part and dissents in part, with an opinion joined by DEWINE, J.

DONNELLY and STEWART, JJ., not participating.

————————————

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 38} I agree with the court's determination that a two-year suspension from the practice of law, with the second year conditionally stayed, is the appropriate sanction for the misconduct committed by respondent, Michael Joseph Cheselka Jr. I also agree with the court's imposition of monitored probation. However, because Gov.Bar R. V(21) requires this court to impose specific conditions on any term of probation we impose, I disagree with the court's decision not to impose any specific conditions on Cheselka's probation.

{¶ 39} Our decisions do not reflect a consistent approach to imposing conditions when sanctioning respondents in attorney-discipline cases. For example, in some cases, this court simply states, when ordering probation, that a respondent is on probation for a set term, *e.g., Akron Bar Assn. v. DeLoach*, 143 Ohio St.3d 39, 2015-Ohio-494, 34 N.E.3d 88, ¶ 20, while in other instances, we specify detailed conditions of probation designed to protect the public and assist the respondent in returning to the ethical practice of law, *e.g.*, *Disciplinary Counsel v. Bennett*, 146 Ohio St.3d 237, 2016-Ohio-3045, 54 N.E.3d 1232, ¶ 19. Or, as another example, when we order restitution, it is sometimes as a condition of future reinstatement to the practice of law, *e.g., Disciplinary Counsel v. Gonzalez*, 138 Ohio St.3d 320, 2014-Ohio-851, 6 N.E.3d 1149, ¶ 35, 39, sometimes as a condition of the stay, *e.g., Disciplinary Counsel v. Ford*, 133 Ohio St.3d 105, 2012-Ohio-3915, 976 N.E.2d 846, ¶ 27, and sometimes as a condition of probation, *e.g., Disciplinary Counsel v. Floyd*, 74 Ohio St.3d 599, 600, 660 N.E.2d 1150 (1996).

{¶ 40} This scattershot approach may allow the court flexibility in the disciplinary process—but only at the price of predictability and sometimes coherence.

{¶ 41} As a case in point, the court today orders Cheselka, as a condition of the stay on the second year of his suspension, to submit to an evaluation by the Ohio Lawyers Assistance Program ("OLAP"), and his compliance with any treatment or counseling recommendations arising from his OLAP evaluation is a condition of his future reinstatement to the practice of law. However, continuing compliance with OLAP's recommendations appears to be unenforceable *after reinstatement*, because it is not a condition of the stay or of monitored probation. Similarly, payment of restitution is a condition of the stay—meaning that Cheselka's failure to pay restitution within 60 days from today would result in his serving the full two-year suspension—but restitution is not a condition of either reinstatement or monitored probation, so it is possible that Cheselka could return to

the practice of law and complete his probation without ever having compensated the victim of his misconduct.

{¶ 42} Rather than being self-defeating, the conditions we impose should work in tandem to protect the public from future misconduct while promoting the respondent's rehabilitation. After all, the primary purpose of our attorney-discipline system is not to punish the offending attorney but to protect the public from attorneys whose misconduct draws their fitness to practice law into question. *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10.

{¶ 43} The need for consistency, predictability, and coherence can largely be satisfied by turning to the Rules for the Government of the Bar, which establish express conditions for reinstatement to the practice of law following a suspension and also provide a detailed system of monitored probation to allow for the continued supervision of a disciplined attorney from his or her reinstatement until the time the conditions of probation we impose have been satisfied.

{¶ 44} Gov.Bar R. V(12)(A) establishes the manner of an attorney's discipline for professional misconduct. Among other sanctions, this court may suspend an attorney from the practice of law for a period of six months to two years subject to a stay in whole or in part. Gov.Bar R. V(12)(A)(3). If we impose such a term suspension, Gov.Bar R. V(12)(A)(4) authorizes us to also impose "[p]robation for a period of time *upon conditions as the Supreme Court determines.*" (Emphasis added.)

{¶ 45} Gov.Bar R. V(24) provides the procedure for an attorney serving a term suspension to apply for reinstatement to the practice of law. This rule requires this court to reinstate the respondent if no formal disciplinary proceedings are pending against the respondent and the respondent has paid all costs of the proceedings as we had previously ordered, complied with our order of suspension and with the continuing-legal-education ("CLE") requirements of Gov.Bar R. X,

and completed serving any criminal sanctions that have been imposed. Gov.Bar R. V(24)(C). In contrast to Gov.Bar R. V(25)'s requisites for reinstatement from an indefinite suspension, Gov.Bar R. V(24) does not expressly provide additional conditions on reinstatement, such as making appropriate restitution or possessing the mental qualifications required to practice law as shown through an OLAP evaluation. *See* Gov.Bar R. V(25)(D)(1)(a) (conditioning reinstatement from indefinite suspension on restitution) and (b) (conditioning reinstatement from indefinite suspension on the respondent's "possess[ing] all of the mental, educational, and moral qualifications that were required of an applicant for admission to the practice of law in Ohio at the time of his or her original admission"). Nonetheless, we have sometimes imposed specific conditions on reinstatement to ensure that the respondent complies with our order. *See, e.g., Gonzalez*, 138 Ohio St.3d 320, 2014-Ohio-851, 6 N.E.3d 1149, at ¶ 35, 39.

{¶ 46} Staying a suspension from the practice of law on conditions can be a preferable method to compel compliance with our disciplinary order without "overburden[ing] attorneys who contribute their time to volunteer as probation monitors," *Disciplinary Counsel v. Harmon*, ___ Ohio St.3d ___, 2019-Ohio-4171, ___ N.E.3d ___, ¶ 57 (Kennedy, J., dissenting). In contrast to Gov.Bar R. V(21)'s provisions on monitored probation, the Rules for the Government of the Bar do not provide any specific requirement or procedure for the relator or a monitoring attorney to supervise the respondent's compliance with the conditions of a stayed suspension. Rather, when we impose conditions on the stay of a suspension, we reserve our power to dissolve the stay and reinstate the suspension from the practice of law, encouraging a disciplined attorney to take control of his or her rehabilitation and comply with his or her professional obligations.

{¶ 47} But here, the court has determined, and I agree, that the respondent's misconduct warrants the imposition of monitored probation. When this court imposes probation, Gov.Bar R. V(21) requires that we impose conditions for the

probation. *Disciplinary Counsel v. Halligan*, ___ Ohio St.3d ___, 2019-Ohio-3748, ___ N.E.3d ___, at ¶ 41-45 (Kennedy, J., concurring in part and dissenting in part). Moreover, the monitored-probation scheme established by Gov.Bar R. V(21) cannot function effectively without this court's imposition of conditions of probation. After all, the first duty of monitoring attorneys that is listed in Gov.Bar R. V(21)(B)(1) is to "[m]onitor compliance by the respondent *with the conditions of probation imposed by the Supreme Court*." (Emphasis added.) And probation cannot be terminated unless "the respondent has complied with the conditions of probation." Gov.Bar R. V(21)(D).

{¶ 48} This court's imposition of specific conditions of probation is "essential to the scheme" of probation established by Gov.Bar R. V(21). *Halligan* at ¶ 43 (Kennedy, J., concurring in part and dissenting in part). The Rules for the Government of the Bar give this court—and only this court—the authority to impose those conditions, *id*. at ¶ 42, and "our failure to attach conditions to probation is more than a missed opportunity to set the criteria and goals for professional redemption, it is an abdication of our duty under the Rules for the Government of the Bar," *id*. at ¶ 41. When this court does not provide guidance to the relator, the respondent, the monitoring attorney, and the Board of Professional Conduct as to the conditions of probation—conditions specifically designed by this court to protect the public and rehabilitate the respondent—it undermines the effectiveness of the probation scheme established by Gov.Bar R. V(21).

{¶ 49} The court imposes a term of probation without ordering any conditions *specific to Cheselka's misconduct* for him to follow while he is serving it. Except for the generic duties Gov.Bar R. V(21)(C) imposes on all attorneys on probation, Cheselka and his monitoring attorney have no direction regarding their respective duties during the term of monitored probation. The lead opinion does not describe what the monitor should be monitoring during the monthly in-person meetings that will be required by Gov.Bar R. V(21)(C)(1), nor does it determine

what access the monitor should have to Cheselka's client files and records or even what would constitute a violation of probation. The lead opinion gives no explanation of how this court would ever be able to find that Cheselka had violated the conditions of probation pursuant to Gov.Bar R. V(21)(K) when no conditions will have been imposed by the court in the first instance. Without express conditions, imposing probation is not only unworkable as a practical matter, but it also raises due-process concerns regarding a disciplined attorney's right to fair notice of what is expected of him or her during the term of probation.

{¶ 50} Therefore, I would impose the following specific conditions for the one-year term of monitored probation to facilitate the supervision of Cheselka's office-management practices: (1) Cheselka shall meet in person with his monitoring attorney on a monthly basis as required by Gov.Bar R. V(21)(C)(1); (2) Cheselka shall provide his monitoring attorney with a written release or waiver for use in verifying compliance regarding medical, psychological, or other treatment as required by Gov.Bar R. V(21)(C)(2); (3) Cheselka shall cooperate and work with the monitor, who shall act as a mentor and provide guidance to Cheselka regarding the proper operation and management of a law practice; (4) Cheselka—with the monitoring attorney or relator, disciplinary counsel—shall design a comprehensive plan to ensure that he is reasonably diligent in the representation of his clients—in the event that Cheselka cannot act with reasonable diligence in representing his clients, relator or the monitoring attorney may limit the number of active cases Cheselka may maintain; (5) Cheselka shall maintain an active-case list or a docketing system and shall give the monitoring attorney an inventory of active cases each month; and (6) Cheselka shall give the monitoring attorney access to nonconfidential client materials and files, ledgers, and account statements as needed to allow the monitoring attorney to review Cheselka's active cases to ensure his compliance with the Rules of Professional Conduct, *see Allen Cty. Bar Assn. v. Williams*, 95 Ohio St.3d 160, 2002-Ohio-2006, 766 N.E.2d 973, ¶ 16.

**{¶ 51}** However, because monitored probation is appropriate in this case, I would also include the following requirements as conditions of probation: Cheselka shall (1) engage in no further misconduct, (2) make restitution of $2,500 to Kimberly Cleveland relative to Cheselka's representation of Darryl Hill, (3) submit to an evaluation by OLAP, (4) comply with any treatment or counseling recommendations arising from his OLAP evaluation, and (5) complete six hours of CLE focused on law-office management in addition to the requirements of Gov.Bar R. X.

**{¶ 52}** "An effective attorney-probation system—one that follows the Rules for the Government of the Bar—requires the considered input of this court in establishing the conditions of probation." *Halligan*, __ Ohio St.3d __, 2019-Ohio-3748, __ N.E.3d __, at ¶ 47 (Kennedy, J., concurring in part and dissenting in part). Because the court fails to impose specific conditions on Cheselka's probation, I dissent in part.

DEWINE, J., concurs in the foregoing opinion.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Lauren A. Gardner, Special Assistant Disciplinary Counsel, for relator.

Alkire & Nieding, L.L.C., and Richard C. Alkire; and Robert V. Housel, for respondent.

_____