**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Medina Cty. Bar Assn. v. Buzzelli***, Slip Opinion No. 2022-Ohio-2470.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-2470

MEDINA COUNTY BAR ASSOCIATION *v.* BUZZELLI.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Medina Cty. Bar Assn. v. Buzzelli*, Slip Opinion No. 2022-Ohio-2470.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Two-year suspension and order to pay restitution.*

(No. 2021-1233—Submitted January 25, 2022—Decided July 20, 2022.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2021-001.

_____

**Per Curiam.**

{¶ 1} Respondent, Russell Anthony Buzzelli, of Cleveland, Ohio, Attorney Registration No. 0038165, was admitted to the practice of law in Ohio in 1987. In a January 2021 complaint, relator, Medina County Bar Association, charged Buzzelli with 23 violations of the Rules of Professional Conduct. The alleged misconduct arose from his representation of three separate clients and his

representation of his wife in a civil-stalking-protection-order ("CSPO") proceeding against one of those clients, with whom he had a sexual relationship.

**{¶ 2}** The parties submitted stipulations of fact and one stipulated rule violation, and the matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. The panel issued a report finding that Buzzelli had committed 18 of the alleged rule violations and unanimously dismissing five others based on the insufficiency of the evidence. The panel recommended that Buzzelli be suspended from the practice of law for two years with six months stayed on the conditions that he make restitution to one of his clients and complete six hours of continuing legal education ("CLE") focused on sexual harassment and employee management.

**{¶ 3}** The board adopted the panel's findings of fact and conclusions of law but recommended that Buzzelli be suspended from the practice of law for two years with no stay. In addition to the conditions recommended by the panel, the board recommended that Buzzelli be required to petition for reinstatement to the practice of law.

**{¶ 4}** Buzzelli objects to the board's recommended sanction and argues that a two-year suspension with one year conditionally stayed is the appropriate sanction for his misconduct.[1]

**{¶ 5}** For the reasons that follow, we adopt the board's findings of misconduct, overrule Buzzelli's objections, and adopt the board's recommended sanction.

---

1. One day before the oral argument on those objections, Buzzelli filed two motions to remand this matter to the board. We hereby deny those motions.

## I. Misconduct

### *A. Counts I and II: The Foster Matters*

#### *1. Buzzelli's Representation of Foster*

**{¶ 6}** At his disciplinary hearing, Buzzelli testified that in July 2017, Mary Beth Foster approached him about representing her in her divorce and in a misdemeanor domestic violence case. In October 2017, Foster paid a retainer of $6,500, and Buzzelli deposited her check into his client trust account.

**{¶ 7}** In August 2018, Buzzelli filed a federal civil-rights lawsuit on Foster's behalf. By October 2018, Foster's divorce was final and she had instructed Buzzelli to take no further action in her other cases. Although Buzzelli informed her of his intent to withdraw from her representation then, he did not formally withdraw from her domestic-violence case until December 2018. At that time, there was a counterclaim pending against Foster in her civil-rights case that required a reply. Buzzelli informed Foster that he would file notice to voluntarily dismiss the case without prejudice. Contrary to his own statement and Foster's prior instruction that he take no further action—and without Foster's knowledge or consent—Buzzelli electronically filed a "Reply Instanter" to the counterclaim on January 2, 2019, along with a motion to withdraw from the case. The reply falsely stated that Foster had signed the document and represented that she had filed it pro se.

**{¶ 8}** In his post-hearing brief, Buzzelli admitted that his conduct violated Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). The board agreed and also found that his conduct violated Prof.Cond.R. 1.4(a)(2) (requiring a lawyer to reasonably consult with the

client about the means by which the client's objectives are to be accomplished). We adopt these findings of misconduct.

*2. Buzzelli's Personal and Business Relationship with Foster*

**{¶ 9}** Buzzelli admitted that he commenced a sexual relationship with Foster in July 2017—shortly after he first met with her and before she retained him. Buzzelli separated from his wife in late 2017 and lived with Foster for several months in early 2018.

**{¶ 10}** Buzzelli agreed to teach Foster the skills she would need to work in a law office. By November 2017, she had a key to his office. Buzzelli denied that Foster was ever a paid employee in his office and described her status as being similar to an intern. Although he claimed that she was unreliable and had no specific job duties, the evidence shows that she was involved in the operation of the office, performed some calendar functions, and had access to Buzzelli's client files and personal bank account. Yet there was no evidence that Buzzelli had provided Foster with any training, instruction, supervision, or guidance regarding the ethical obligations of a lawyer or a lawyer's office staff.

**{¶ 11}** Buzzelli ended his personal relationship with Foster in September 2018 and asked her to stop coming to the office. He changed the locks to his office in the summer or fall of 2018 because Foster did not return her key. Buzzelli testified that his office computers, email accounts, and telephones were "hacked" and suggested that Foster was responsible. But he never stated when those events actually occurred and the only evidence that he offered to support his claims were his own testimony and hearsay statements allegedly made to him by a police officer and computer technicians.

**{¶ 12}** Buzzelli also testified that his office had been broken into at least six times and that numerous items, including computers, files, bank records, and client checks were stolen. He was able to retrieve some of the stolen property, including a computer, with help from Foster's father. Buzzelli reported some of the break-

4

ins to police in December 2018 and January 2019, informing them that he suspected that Foster or another former client was responsible. However, he did not inform any of his clients that their checks had been stolen. Buzzelli testified that at some point, he discovered that the client checks had been deposited into his account and were then transferred to Foster's account, but the board found that the means by which those actions were accomplished were unclear.

{¶ 13} Buzzelli stipulated that his personal relationship with and representation of Foster created a conflict of interest in violation of Prof.Cond.R. 1.7(a)(2) (providing that a lawyer's continued representation of a client creates a conflict of interest if there is a substantial risk that the lawyer's ability to represent the client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests). The board agreed and also found that Buzzelli had failed to make reasonable efforts to ensure that Foster's conduct as a worker in his law office would be compatible with his professional obligations and therefore violated Prof.Cond.R. 5.3(a) (requiring a lawyer possessing managerial authority in a law firm to make reasonable efforts to ensure that the conduct of nonlawyers working for the firm is compatible with the professional obligations of the lawyer).

*3. Buzzelli's Threat Against Foster*

{¶ 14} In September 2018, Foster recorded part of a conversation that she had with Buzzelli at his office. The recording was played at the disciplinary hearing and admitted into evidence along with a transcript of the recording. During that conversation, Buzzelli spoke in a threatening tone, stating:

Is that door closed? Is that window closed? OK, good. Now, if you would please. I'm going to make this real clear. So, you can look at me and you can smell me when I say this. And I don't give a shit whether you like it or not, but I'm touching you.

[Audible rustling.]  Alright, now look at me.  I have fucking killed a human being.  And you know what, I am not fucking proud of that.  But there's one thing that I have a capacity to do and to be, alright, is a killer.  Now, one thing you don't have and you talk big and bad, is you don't have that capacity.  And it is a horrible capacity to have.  Alright?  You want to rat me out and tell people about it, you go right ahead.

{¶ 15} The board found that Buzzelli had touched Foster against her will during their conversation.  At his disciplinary hearing, when asked whether he was trying to frighten and intimidate Foster, Buzzelli replied, "Scared straight, I guess you'd call it, yes."  He attempted to justify his conduct by claiming that Foster had threatened to kill his wife.  But he offered no other evidence to corroborate that claim.

{¶ 16} The board found that the statements Buzzelli had made in the recording were intended to intimidate and frighten Foster.  And although Buzzelli denied that his statements constituted a threat to kill Foster, the board found that they were an implied threat to do just that.  Moreover, the board found that Buzzelli's statements to Foster constituted an illegal act—namely, the fourth-degree-misdemeanor offense of menacing.  *See* R.C. 2903.22 (prohibiting a person from knowingly causing another to believe that the offender will cause physical harm to his or her person or property).  Based on that conduct, the board found that Buzzelli had violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness).  The board also found that Buzzelli's threat against Foster was so egregious as to warrant an additional finding that he had violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to

practice law). *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21. We adopt these findings of misconduct.

*4. Buzzelli's Representation of His Wife in a CSPO Proceeding Against Foster*

{¶ 17} Buzzelli's wife, Gail, had surgery in October 2018 and required supervision during her recovery. Buzzelli fixed a space in his office for Gail to rest while he worked. Gail, who had previously worked as Buzzelli's assistant, occasionally answered the telephone or performed other light work to assist him during her convalescence.

{¶ 18} On March 8, 2019, Buzzelli took Gail to the Medina County Common Pleas Court to file a petition for a CSPO against Foster. In the petition, Gail alleged that Foster had stalked her at her home and her place of employment (Buzzelli's office), had broken into her place of employment, had accessed her work computer and erased numerous files, had taken office documents and property, and had damaged other property. Gail further alleged that she had experienced recurring problems with her email accounts and that Foster had taken one of her private emails, added horrible language threatening Gail with physical harm, and then forwarded it to Buzzelli's email address—but Gail did not allege that Foster had threatened to kill her. The petition identified Buzzelli as Gail's counsel, and he represented her at the initial hearing, obtaining an ex parte CSPO against Foster.

{¶ 19} On April 2, 2019, Foster was arrested for violating the ex parte order after she was seen in the Walmart parking lot across the street from Buzzelli's law office. Buzzelli represented his wife at the July 1, 2019 CSPO hearing and Foster appeared without counsel. When cross-examining Foster, Buzzelli asked if she had hacked her ex-husband's email account during their divorce. When the magistrate asked Buzzelli whether he knew about that conduct because he had represented Foster in her divorce, Buzzelli answered in the affirmative and claimed that Foster had waived the attorney-client privilege by filing a grievance against him with

relator. The magistrate did not allow the question. The court ultimately denied the petition for a CSPO against Foster and terminated the ex parte order that had been issued against her.

{¶ 20} During his disciplinary hearing, Buzzelli admitted that he had used the information he obtained when representing Foster to her disadvantage in the CSPO hearing. He claimed, however, that he had a "common law privilege" to use the information "in self-defense and the defense of others." The board rejected that claim noting that self-defense is a defense to a criminal charge or a civil tort action involving the alleged unlawful use of force and that it can also be asserted as a defense in a civil-protection-order proceeding under R.C. 3113.31(E)(4)(d) (involving alleged domestic violence or the violation of a temporary domestic violence protection order). The board noted, however, that Buzzelli's wife had filed a petition for a CSPO under R.C. 2903.214 based on allegations of menacing by stalking, which does not involve the actual or imminent use of force to cause serious physical harm or death. *See* R.C. 2903.211 (defining the offense of menacing by stalking).

{¶ 21} The board found that because Gail was Buzzelli's client in the CSPO proceeding, he had a duty to recommend an appropriate course of legal action—a duty that was clearly limited by his responsibilities to his former client, Foster, and by his own personal interests. Indeed, much of the evidence presented at the CSPO hearing related to Foster's actions toward Buzzelli—not Gail. And Buzzelli admitted that he could have been called as a witness in the case.

{¶ 22} The board found that Buzzelli's conduct violated Prof.Cond.R. 1.7(a)(2) because there was a substantial risk that his representation of Gail would be materially limited by his responsibilities to Foster. The board also found that Buzzelli's disclosure of information that he had obtained while representing Foster violated Prof.Cond.R. 1.9(c)(1) (prohibiting a lawyer from using information relating to the representation of a former client to the disadvantage of the former

client unless the information has become generally known, or disclosure is permitted by rule).

{¶ 23} We note that Prof.Cond.R. 1.6(b) permits a lawyer to reveal information relating to the representation of a client, including information protected by the attorney-client privilege, only to the extent that the lawyer reasonably believes disclosure is necessary for certain enumerated purposes. Those purposes include preventing reasonably certain death or substantial bodily harm, preventing the commission of a crime by the client or another person, establishing a claim or defense on the attorney's behalf in a controversy between the attorney and the client, or responding to allegations in any proceeding (including a disciplinary matter) concerning the lawyer's representation of the client. *See* Prof.Cond.R. 1.6(b)(1), (2), and (5). Although Buzzelli claimed that his disclosure of Foster's confidential information was made in "self-defense," the board noted that he was not a party to the CSPO proceedings. Therefore, he could not reasonably claim that he was defending himself or responding to allegations concerning his representation of Foster. Nor has Buzzelli argued that the disclosure was *reasonably necessary* to prevent reasonably certain death or substantial bodily harm or to prevent Foster from committing another crime. We therefore adopt the board's findings that Buzzelli's conduct in Count II violated Prof.Cond.R. 1.7(a)(2) and 1.9(c)(1).

### B. Count III: The Tramonte Matter

{¶ 24} In January 2018, Marlene Tramonte retained Buzzelli to terminate her marriage of more than 40 years. In January and again in March, her husband's attorney, Robert Roe Fox, wrote to Buzzelli requesting five categories of documents that he needed from Tramonte to prepare a proposed separation agreement. Buzzelli finally furnished the requested information to Fox in May 2018. On June 1, Fox sent the draft-separation agreement and copies of related documents to Buzzelli.

**{¶ 25}** Although the Tramontes had effectuated a division of personal property, Buzzelli did not respond to Fox's proposed separation agreement or his inquiries regarding the status of the matter. And despite the fact that Tramonte had requested an accounting of her retainer on three separate occasions in April and May 2018, Buzzelli did not provide her with an interim bill until June. According to that bill, Buzzelli had performed $9,925 in legal services through June 2, 2018.

**{¶ 26}** Frustrated with the lack of progress in her case, in October 2018, Tramonte informed Buzzelli that she was terminating his representation. After Tramonte retained new counsel, she and her husband entered into a separation agreement and filed for a dissolution of marriage in Summit County in July 2019. They were granted a dissolution in September 2019—nearly a year after Tramonte had terminated Buzzelli's representation.

**{¶ 27}** At Buzzelli's disciplinary hearing, the panel heard conflicting testimony about the work that Buzzelli had performed on Tramonte's behalf and the fees that he had charged for his services. The board determined that Buzzelli's testimony on those issues was not credible.

**{¶ 28}** In addition to the Tramontes' marital assets, each of the spouses had inherited significant assets, including investment accounts and ownership interests in family businesses. Tramonte testified that she was fully aware of her husband's assets and had no concern that he was concealing anything from her. But Buzzelli believed that Tramonte needed to have forensic evaluations of the businesses conducted to determine whether any appreciation might qualify as a marital asset subject to division in the dissolution. He claimed that he and Tramonte had discussed hiring experts and that he had spent a significant amount of time identifying a field of nine experts. Buzzelli also claimed that Tramonte had immediately retained the services of Stuart Horwitz, a tax attorney.

**{¶ 29}** Contrary to Buzzelli's testimony, however, Tramonte testified that the only expert that Buzzelli had ever discussed with her was the "tax guy," whose

name she could not remember. In fact, the only expert mentioned in Buzzelli's email communications with Tramonte is David Tissot, the accountant who handled her husband's accounting, with whom Buzzelli had been authorized to speak. Buzzelli presented no other evidence to show that Tramonte had ever contacted or employed Horwitz or any other expert to examine or evaluate the Tramontes' assets. Consequently, the board found Buzzelli's testimony regarding his efforts to select and retain experts was not credible.

{¶ 30} Buzzelli also testified that he had drafted a separation agreement and a dissolution decree on Tramonte's behalf. The board noted several discrepancies in those documents and the witness testimony about them. For example, the documents stated that they were to be filed in Ottawa County rather than in Summit County where the Tramontes actually filed their petition for dissolution. And the separation agreement that Buzzelli prepared also stated that the parties had entered into the agreement on December 1, 2018, approximately three months *after* Tramonte terminated Buzzelli's representation. The board also noted that Buzzelli testified that he had taken the case to "near final." But it found that if that testimony were true, Buzzelli would have shared his draft documents with Tramonte and Fox—who both testified that they had not seen those documents before Buzzelli's disciplinary hearing. Furthermore, the board concluded that if Buzzelli's work was the basis of the Tramontes' separation agreement it would not have taken them nine months after his termination to sign an agreement. Although the board stated that there was no doubt that Buzzelli had prepared the draft documents, it found that there was no credible evidence that he did so *before* Tramonte terminated his representation.

{¶ 31} With regard to the fees for Buzzelli's services, Tramonte testified that Buzzelli had told her that she would be entitled to a refund of $1,000 to $2,000 when she terminated his representation, but that she had never received a final bill. On the other hand, Buzzelli claimed that he had told Tramonte that she would owe

him at least $2,000 more if he prepared a final bill and that, in response, she told him not to bother.

{¶ 32} According to Buzzelli, he had to reconstruct his June 2018 interim bill and his final bill sometime after Tramonte terminated his representation because his computer had been "hacked" and he had to retain the services of a computer expert to regain access to his email accounts. Buzzelli testified that he had had access to his computer and one of his email accounts and was able to reconstruct his interim bill to Tramonte by June 2019, and that he had started working on Tramonte's final bill sometime in 2019 but did not finish it until March 2021. Buzzelli provided a copy of the final bill to his counsel and relator, but he never presented it to Tramonte.

{¶ 33} Although Buzzelli attributed his delayed billing to his inability to access his computer files and email accounts after they had been hacked, he also testified that he still had Tramonte's file in his possession until the end of October 2018. His wife confirmed that even after they had delivered the file to Tramonte's new counsel, they had retained a copy of it until it was "stolen," presumably by Foster. Tramonte testified that she had received her file from Foster around Thanksgiving 2018. The board therefore rejected Buzzelli's claim that his nearly two-year delay in preparing Tramonte's bill was occasioned by the alleged computer hacking and found that he had had ample time to prepare a final account before the file was taken.

{¶ 34} The board also noted numerous inconsistencies between the interim bill that Buzzelli had presented to Tramonte in June 2018 and his final accounting. For example, the interim bill, which included work performed on or before June 2, 2018, showed that Buzzelli had conducted 15 telephone conferences with Tramonte for a total of three hours, but it indicated that there would be no charge for those services. However, Buzzelli's final accounting included charges for more than six hours of telephone conferences with Tramonte, over the same time period.

**{¶ 35}** In a similar fashion, Buzzelli's interim bill showed that he had spent five hours locating case experts, but in his final accounting, he charged Tramonte for 30 hours for those services. The board also questioned the more than six hours that Buzzelli had charged for preparing a separation agreement that neither Tramonte nor her husband's counsel received and three of the hours that he had charged for completing four spousal-support scenarios that, according to attorney Fox, should have taken about an hour.

**{¶ 36}** The board determined that Buzzelli's final accounting was not credible and was created solely for the purpose of justifying his retention of Tramonte's $15,000 retainer. Ultimately, the board found that in his June 2018 interim bill, Buzzelli had charged Tramonte for 13.75 hours of work that he did not perform. The board acknowledged that Buzzelli had represented Tramonte through October 17, 2018, and that he likely would have had some additional hours to bill for services performed during that time. Because he did not promptly prepare a bill upon the termination of his representation—when he still had access to his case file, computer, and email accounts—the board concluded that he should not benefit from his failure to provide Tramonte with a timely accounting of her $15,000 retainer. Deducting the 13.75 hours of work that was not performed from the June 2018 billing statement, the board concluded that Buzzelli owes Tramonte restitution of $7,860, though in an apparent typographical error, the board later stated that he owed restitution of $7,869.

**{¶ 37}** The board found that Buzzelli's conduct with respect to Tramonte's case violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), and 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment).

**{¶ 38}** The board also found that if, as Buzzelli claimed, Foster's actions had prevented him from compiling Tramonte's billing, it was due to his own failure to make reasonable efforts to ensure that Foster's actions would comply with his professional obligations and that he thereby violated Prof.Cond.R. 5.3(a). We adopt the board's findings of misconduct with respect to this count.

### C. Count IV: The Chirdon Matter

**{¶ 39}** On February 12, 2019, the Wadsworth Municipal Court appointed Buzzelli to represent Ramona J. Chirdon in the appeal of a conviction for operating a vehicle while intoxicated. Buzzelli immediately contacted Chirdon and filed a timely notice of appeal the next day.

**{¶ 40}** On March 4, 2019, a magistrate for the appellate court ordered Chirdon to file a response demonstrating how all counts and specifications had been resolved by the trial court so that the court could determine whether it had jurisdiction over her appeal. Buzzelli did not inform Chirdon of that order and failed to file a response. Consequently, the appellate court dismissed the appeal on April 25. Buzzelli did not inform Chirdon of that order or take any immediate action in her case and on May 3, she filed a grievance against him.

**{¶ 41}** In June 2019, a public defender filed a motion to reopen the appeal alleging that Buzzelli had failed to provide Chirdon with effective assistance of counsel. The appellate court granted that motion on July 15 and appointed new counsel to represent Chirdon. Buzzelli later filed motions requesting a two-week extension to file a transcript and a briefing schedule without filing a motion to reopen Chirdon's appeal but the appellate court struck those filings because Buzzelli was no longer Chidron's counsel of record.

**{¶ 42}** In his testimony before the panel, Buzzelli claimed that he had had telephone conversations with the appellate-court magistrate about his wife's ill health after the magistrate filed the initial order and the court dismissed Chirdon's case. He stated that based on those conversations, he understood that he had no

reason to be concerned about the magistrate's order or the dismissal. But the board found Buzzelli's testimony was not credible because the appellate court's finding of ineffective assistance of counsel directly contradicted his claim. Additionally, the board noted that Buzzelli had denied having committed any violations with respect to this count until the second day of his disciplinary hearing, when he admitted that he did not diligently and competently represent Chirdon and that his conduct violated Prof.Cond.R. 1.1 and 1.3. The board found that his conduct violated each of those rules and that it also violated Prof.Cond.R. 1.4(a)(3). We adopt these findings of misconduct.

## II. Recommended Sanction

**{¶ 43}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the attorney violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 44}** Seven aggravating factors are present in this case—Buzzelli acted with a dishonest or selfish motive; engaged in a pattern of misconduct; committed multiple offenses; submitted false evidence, false statements, or other deceptive practices during the disciplinary process; refused to acknowledge the wrongful nature of his conduct; caused harm to vulnerable clients; and failed to make restitution to Tramonte. *See* Gov.Bar R. V(13)(B)(2), (3), (4), (6), (7), (8), and (9).

**{¶ 45}** With regard to Buzzelli's selfish or dishonest motive, the board explained that Buzzelli had benefitted from his relationship with Foster by engaging in a sexual relationship with her, living with her while he was estranged from his wife, and having her work in his office without pay. He then used information he had obtained from their attorney-client relationship against Foster in the CSPO proceedings. In addition, the board found that Buzzelli had exhibited a selfish or dishonest motive. It also found that he had submitted false evidence or statements and had engaged in deceptive practices during the disciplinary process by belatedly

preparing a separation agreement and creating a false billing statement to justify his failure to refund any of Tramonte's retainer.

{¶ 46} Buzzelli denied all of the alleged misconduct in his answer to relator's complaint and stipulated to just one rule violation the day before his disciplinary hearing commenced. He did not admit that he had committed eight other rule violations until he presented his defense on the second day of his disciplinary hearing. The board noted that he had attempted to blame his misconduct on Foster and had had his wife file a petition for a CSPO to get back at Foster. He demonstrated little remorse for his conduct—other than to express his regret for having agreed to represent Foster—until the oral argument before this court.

{¶ 47} The board found that all three of Buzzelli's clients were vulnerable and had suffered harm. Foster was involved in a contentious divorce proceeding and had a criminal charge filed against her by her estranged husband when she and Buzzelli commenced their sexual relationship. After Buzzelli agreed to represent her, he exploited that relationship by having her work in his office without pay and living with her, and as their relationship deteriorated, he tried to intimidate her by telling her that he had killed another human being. And after he used his wife to obtain an ex parte CSPO against her, Foster was arrested for what appeared to be nothing more than being in the Walmart parking lot across from his office. Tramonte sought to amicably terminate her marriage, and over a period of nine months, Buzzelli accomplished little more than the division of personal property for a claimed fee in excess of $15,000. Chirdon's appeal of her criminal conviction was also dismissed and delayed as a result of Buzzelli's neglect.

{¶ 48} As for mitigating factors, Buzzelli has no prior disciplinary record and presented some evidence of his good character and reputation—although the board did not find the character evidence to be compelling.

{¶ 49} After considering 11 cases involving different elements of misconduct similar to Buzzelli's, the panel recommended that we suspend Buzzelli from the practice of law for two years and stay the final six months of that suspension on the conditions that he commit no further misconduct, complete at least six hours of CLE focused on sexual harassment and employee management, and pay restitution of $7,860 to Tramonte.

{¶ 50} However, citing Buzzelli's threats of violence against Foster and his misrepresentations in the federal-court filing he made on Foster's behalf, the board recommends that we suspend him from the practice of law for two years with no stay and order him to make restitution to Tramonte. In addition, the board recommends that we require Buzzelli to petition this court for reinstatement pursuant to Gov.Bar R. V(25) and that we also require him to complete the CLE recommended by the panel as a condition of reinstatement.

### III. Buzzelli's Objection to the Recommended Sanction

{¶ 51} Buzzelli objects only to the board's recommended sanction. Buzzelli asserts that he stipulated or admitted to ten rule violations—though he also attempted to withdraw those stipulations at oral argument—that he has had no prior discipline in his 34 years of practice, and that he has submitted evidence of his good character and reputation. He identifies three cases—*Disciplinary Counsel v. Dougherty and Cicero*, 157 Ohio St.3d 486, 2019-Ohio-4418, 137 N.E.3d 1174; *Disciplinary Counsel v. Cheselka*, 159 Ohio St.3d 3, 2019-Ohio-5286, 146 N.E.3d 534; and *Toledo Bar Assn. v. Yoder*, 162 Ohio St.3d 140, 2020-Ohio-4775, 164 N.E.3d 405—in which we have imposed lesser sanctions on attorneys who, Buzzelli contends, committed misconduct that exceeded his own. Based on that authority—and arguing that the recommended sanction would cause great personal hardship to himself and his disabled wife—Buzzelli argues that a two-year suspension with the second year stayed on the conditions recommended by the

board is the appropriate sanction for his misconduct. For the reasons that follow, we overrule Buzzelli's objection.

{¶ 52} Like Buzzelli, Dougherty neglected a client's legal matter, failed to reasonably communicate with a client, failed to take reasonable steps to protect a client's interests upon the termination of his employment, failed to promptly refund an unearned fee, and engaged in dishonest conduct. Dougherty also aided a suspended attorney in the unauthorized practice of law, failed to properly notify his clients and the Office of Disciplinary Counsel of his relationship with the suspended attorney, charged a clearly excessive fee, and failed to hold client funds in his trust account. Although Dougherty disclosed confidential information without his client's informed consent, he did not attempt to use that information to disadvantage the client as Buzzelli did when he represented his wife against his former client in a CSPO proceeding.

{¶ 53} The only mitigating factor present was Dougherty's clean disciplinary record. However, aggravating factors included his dishonest or selfish motive, a pattern of misconduct, multiple offenses, harm to the victims of his misconduct, and his failure to make restitution. We suspended Dougherty from the practice of law for two years with the second year stayed on conditions that included the payment of restitution. We also conditioned his reinstatement on proof of his achieving a passing score on the Multistate Professional Responsibility Examination, and we required him to serve a two-year period of monitored probation.

{¶ 54} In *Cheselka*, we imposed the same sanction with similar conditions on an attorney who failed to act with reasonable diligence and promptness in several client matters, failed to provide competent representation and reasonably communicate with two clients, submitted a falsely notarized affidavit to a court, and failed to respond to multiple letters of inquiry regarding several client grievances. In addition to the same aggravating and mitigating factors that are

present in this case, Cheselka failed to cooperate in the disciplinary process, and we considered the stress brought on by his parents' declining health and deaths during the relevant time period to be a mitigating factor. In contrast to Buzzelli, however, the board noted that much of Cheselka's misconduct arose from his efforts to " 'do too much with too little during a discrete period of time when his personal life was unsettled.' " *Cheselka*, 159 Ohio St.3d 3, 2019-Ohio-5286, 146 N.E.3d 534, at ¶ 32.

**{¶ 55}** In *Yoder*, an attorney made false statements about a magistrate, opposing counsel, and opposing parties in two separate client matters. He also threatened an opposing party's financial well-being and made unfounded allegations about her mental condition and fitness to practice law to two professional regulatory boards. The only rule violations that Yoder and Buzzelli have in common are making false statements of fact or law to a tribunal, engaging in dishonesty fraud, deceit, or misrepresentation, and engaging in conduct that is prejudicial to the administration of justice.

**{¶ 56}** Just four of the six aggravating factors present in this case were present in *Yoder*—Yoder engaged in a pattern of misconduct, committed multiple offenses, refused to acknowledge the wrongful nature of his conduct, and caused harm to vulnerable victims. In mitigation of punishment, Yoder had no prior discipline and cooperated in the disciplinary proceedings. We suspended Yoder from the practice of law for two years with the final six months stayed on the condition that he commit no further misconduct. We also ordered him to submit to an evaluation conducted by the Ohio Lawyers Assistance Program and comply with any recommendations arising therefrom.

**{¶ 57}** Buzzelli attempts to distinguish the facts of *Dougherty*, *Cheselka*, and *Yoder* from his own case on the grounds that he committed fewer rule violations over a shorter period of time and that those violations affected fewer clients. He also asserts that he practiced law several years longer than Yoder and nearly twice

as long as Cheselka before facing disciplinary charges, that he has admitted to some of his misconduct, and that he showed remorse for his actions. Those arguments are without merit.

**{¶ 58}** We find that Buzzelli committed 18 violations of the professional conduct rules—not just the nine violations that he stipulated to by the close of his disciplinary hearing. And the misconduct at issue in *Dougherty*, *Cheselka*, and *Yoder* bears no similarity to some of Buzzelli's worst offenses. In particular, none of those attorneys engaged in client representations that created conflicts of interest or used information relating to the representation of a former client to the disadvantage of that former client. Nor did they intimidate or threaten a client with their capacity to kill another human being as Buzzelli did.

**{¶ 59}** Although the facts in this case present a unique combination of misconduct, the sanctions imposed in *Dougherty*, *Cheselka*, and *Yoder* are instructive with respect to the appropriate sanction for Buzzelli's violations of Prof.Cond.R. 1.1 (incompetent representation), 1.3 (neglect), 1.4 (failure to reasonably communicate), 1.16(e) (failure to refund unearned fee), 8.4(c) (dishonesty), and 8.4(d) (conduct prejudicial to the administration of justice). In addition, our decision in *Disciplinary Counsel v. Detweiler*, 135 Ohio St.3d 447, 2013-Ohio-1747, 989 N.E.2d 41, is instructive with respect to the appropriate sanction for Buzzelli's violations of Prof.Cond.R. 1.7(a)(2) (conflicts of interest) and 1.9(c)(1) (use of information relating to the representation of a former client to the disadvantage of the former client). Detweiler sent multiple text messages of a sexual nature to a client over a period of several months, including a nude picture of himself. He also continued to represent the client in her divorce despite the conflict of interest created by his expressed sexual interest in her. In imposing a one-year suspension from the practice of law for that misconduct, we found that Detweiler had harmed a vulnerable client, had acted with a selfish motive, and had

engaged in a pattern of misconduct that involved a previous sexual relationship with another client.

{¶ 60} In this case, Buzzelli was not found to have engaged in an inappropriate sexual relationship with Foster, because the only evidence regarding the commencement of their sexual relationship was Buzzelli's testimony that it started before he began representing Foster. Buzzelli, however, stipulated that his personal relationship with Foster as he represented her in her divorce created a substantial risk that his ability to represent her would be limited by his own personal interests. We have also found that his representation of his wife in the CSPO proceeding against Foster created a similar conflict of interest. He also used information he had obtained during his representation of Foster against her in the CSPO proceeding in violation of Prof.Cond.R. 1.9(c)(1). Given these precedents, Buzzelli's additional misconduct by failing to take reasonable efforts to ensure that Foster's conduct in his law office was compatible with his professional obligations and his implied threat to kill Foster, and the significant aggravating factors present in this case, including Buzzelli's lack of candor throughout this disciplinary proceeding, we agree that the appropriate sanction in this case is a two-year suspension with no stay.

{¶ 61} The limited mitigating evidence—consisting of Buzzelli's 34 years of practice with no prior discipline and character evidence from nine people who were, for the most part, unaware of the charges against Buzzelli—is insufficient to justify a stay of any portion of that suspension. Furthermore, the protection of the public must take precedence over the financial hardships that Buzzelli has brought on himself.

{¶ 62} We therefore overrule Buzzelli's objection and adopt the board's recommended sanction.

## IV. Conclusion

**{¶ 63}** Accordingly, Russell Anthony Buzzelli is suspended from the practice of law in Ohio for two years and is ordered to make restitution of $7,860 to Marlene Tramonte within 60 days of the date of this order. In addition, Buzzelli shall be required to petition for reinstatement pursuant to Gov.Bar R. V(25) and to submit proof that he has completed six hours of CLE focused on sexual harassment and employee management in addition to the requirements of Gov.Bar R. X. Costs are taxed to Buzzelli.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Walker & Jocke Co., L.P.A., and Patricia A. Walker; and Patricia F. Lowery, for relator.

Russell Anthony Buzzelli, pro se.

_____